**Rosie RANDLE et al., Plaintiffs,**

v.

**INDIANOLA MUNICIPAL SEPARATE SCHOOL DISTRICT et al., Defendants.**

No. GC 72–85–S.

United States District Court, N. D. Mississippi, Greenville Division.

March 28, 1974.

Clell G. Ward and Eugene L. Mc-Lemore of McLemore & Ward, Greenville, Miss., for plaintiffs.

Frank O. Crosthwait, Jr., of Lyon, Crosthwait & Terney, Indianola, Miss., Fred C. DeLong, Jr., of Campbell, DeLong, Keady, Robertson & Hagwood, Greenville, Miss., for defendants.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action was submitted to the court for decision at an evidentiary hearing held in the United States Courthouse at Oxford, Mississippi, on January 30, 1974. After having fully considered the evidence introduced, the court makes the following findings of fact and conclusions of law as required by Rule 52(a), F.R.Civ.P.

Plaintiffs are husband and wife. They are members of the Black race. The defendants are the Indianola Municipal Separate School District, its Superintendent, D. B. Floyd (Floyd), and the members of its Board of Trustees.

Plaintiff, Rosie Randle, was, before her marriage, Rosie Knox. She and her husband, Carver Randle (Randle), were married November 25, 1965.

Mrs. Randle was a member of the 1964 graduating class of Mississippi Valley State College, Itta Bena, Mississippi. She received a B.S. Degree in elementary education. This college in 1964 was an all-black institution. Upon graduation Mrs. Randle applied for and received a contract to teach in the Carver Elementary School of defendant school district. At the time of her employment, the defendant school district operated a dual system of schools. Carver Elementary was an all-black school.

Mr. Randle taught in Carver Elementary for two years, 1964–65 and 1965–66. At the close of the first year, Mrs. Randle and several other teachers were not recommended for reemployment by Hezkiah Brown, principal of the school. This fact was not made known to them until the last week of school. Brown's complaint against the teachers was that they spent too much time out of their classrooms in the teacher's lounge. A teachers' protest followed. The Superintendent of the schools, at the time, O. B. Reno, and Floyd, who was the principal of the high school in the district, went to Brown's office to hear the grievances. As a result of the conference all of the teachers were given contracts for the next year, 1965–1966.

Mrs. Randle is not a native of Indianola. She moved from another portion of the state. Mr. Randle is a native of Indianola. He attended Mississippi Valley State College, graduating in the class of 1965. During the years of 1966 and

1967, Mr. Randle worked in schools in Panola and Washington Counties, Mississippi.

Mrs. Randle completed the school year 1965–1966 as a teacher in Carver Elementary School. She left the system at the end of that school year without seeking reemployment because of her pregnancy.

The Indianola Development Association was organized in 1964 or 1965. The association is a predominately Black organization and devotes its efforts to the improvement of the public schools in Indianola. The Sunflower Branch of the NAACP was organized in 1967. Randle took an active part in the activities of both organizations, serving as president of the Sunflower Branch of NAACP. The NAACP organized a boycott of the Indianola Schools in May 1968. Randle was one of the leaders of this movement. Floyd became acquainted with Randle for the first time during the boycott. The schools of the district were fully desegregated by court order in 1970. Most, if not all, of the White children and White faculty members left the district for private segregated schools. Randle was active in the Civil Rights movement among Black citizens in all aspects of community affairs. He became active in politics. On one occasion Randle ran for Mayor and on another made the race for a legislative post. Randle was unable to secure employment in the Indianola Schools, although he made an application for employment on several different occasions.

During the school years 1966–1967 and 1967–1968, both Mr. and Mrs. Randle were employed in school districts of other towns in Mississippi. Mrs. Randle did not teach during the school year 1968–1969, as her second child was born in September 1968. Randle taught in the Quitman County Schools during the 1968–1969 school year. In the fall of 1969, the Randles moved to Oxford, Mississippi where Randle entered the School of Law of the University of Mississippi. During the school years 1969–1970 and 1970–1971, Mrs. Randle taught in the Oxford Schools. During the school year 1971–1972 the Randles lived in Indianola and Mr. Randle worked for the North Mississippi Rural Legal Services Association at Greenwood. Mrs. Randle was unemployed.

Mrs. Randle secured a position with the Sacred Heart School of Greenville, Mississippi for the school year 1972–1973, and, at the time of the hearing in this action, she was employed as a teacher in that school.

As a result of the 1968 school boycott of the Indianola Schools, Hezkiah Brown was released from his employment by the defendant School District. Robert L. Merritt was employed to replace Brown as principal of the Carver Middle School (Grades 5, 6 and 7). Merritt had been classroom teacher in the school, working with Brown for several years. During this period Merritt worked with Mrs. Randle and had occasion to observe her work and considered her to be a competent teacher.

Mrs. Randle made application for a teacher's position in the Indianola Schools for the school year 1970–1971. She filed her application with Merritt, the school principal. Merritt did not recommend her employment, however, as there were no vacancies at the time.

Again in 1971 Mrs. Randle made application for a teacher's position with the Indianola Schools. She filed this application with Merritt. There was a vacancy at the time, and Merritt, having concluded that she was a qualified and competent teacher, and the best qualified applicant which he had for the position, recommended her to Floyd for employment.

The selection of individuals to teach in the public schools in Mississippi is governed by Miss.Code Ann. § 37–9–17 (1972).[1] The statute provides that the

---

1. Miss.Code Ann. § 37–9–17 (1972), provides in pertinent part:

On or before April 1st of each year, the principal of each school shall recommend to

principal of each school shall recommend the teachers to be employed for the school to the Superintendent. If the recommendations meet the approval of the Superintendent, he recommends the employment of the teachers to the Board of Trustees. The Board has the duty to contract with the teachers so recommended unless good cause to the contrary exists.

Floyd did not approve Mrs. Randle for employment in the school district and her name was not submitted to the Board for its consideration.

Plaintiffs contend that Floyd refused to recommend Mrs. Randle for the sole reason that she was the wife of Carver Randle, in order to chastise and punish Randle through his wife for his role in the promotion of the Civil Rights of the Black citizens of the community. This is the sole issue in this action, for upon its determination rests the rights of the parties.

Prior to June 1971, when she was recommended by Merritt, Floyd had not had any contact with Mrs. Randle. He knew her as Rosie Knox since the time he and Reno had a contact with her at the May 1965 meeting at the Carver Elementary School mentioned above. On June 25, 1971, just before noon, Merritt carried Mrs. Randle's application and the application of one other teacher to Floyd's office. Merritt left the applications in the office as Floyd was not there. He attached a written recommendation to the applications. On his return shortly thereafter, Floyd attempted to get in touch with Merritt by telephone, calling first Merritt's office, then his home, and finally his office again. When Floyd reached Merritt at his office on the second attempt, he asked Merritt if he knew that Mrs. Randle, whose name appeared on one of the applications which Merritt had left in his office, was Carver Randle's wife. Upon receiving an affirmative answer, Floyd requested that Merritt come to his office. Merritt did so, arriving there at about 1:00 o'clock. When Merritt arrived at Floyd's office, Floyd asked him the second time if he knew that the applicant was the wife of Carver Randle, and if Merritt was certain of that fact. When Floyd asked Merritt why he had recommended Mrs. Randle for a teaching position, Merritt told him that he recommended Mrs. Randle because she was certified, that he knew her to be qualified, and that she was the best teacher he had at the time for the position. When confronted with these facts Floyd informed Merritt that he could not recommend Mrs. Randle for employment. Floyd did not explain his position that he knew Mrs. Randle to be an incompetent teacher. Floyd did, however, say to Merritt that Carver Randle was considered by some to be the most controversial person to come to Indianola in the past 15 years.

In his testimony before the court, Floyd testified that on one occasion before his untimely death in 1967, Reno, who was then the Superintendent of the schools, stated to him that he did not consider Mrs. Randle as a competent teacher. Floyd also testified that he did not inform Merritt of this fact, for the reason that he had more confidence in Reno's judgment than in Merritt's, and such a statement would have been an affront to Merritt. Floyd further testified that based upon this single statement to him by Reno, four years previously, he concluded Mrs. Randle was

the superintendent of the school district the teachers to be employed for the school involved except those teachers who have been previously employed and who have a contract valid for the ensuing scholastic year. If such recommendations meet with the approval of the superintendent, he shall recommend the employment of such teachers to the board of trustees of the district, and, unless good reason to the contrary exists,

the board of trustees or other governing body shall elect the teachers so recommended. If, for any reason, the board of trustees shall decline to elect a teacher or teachers so recommended, additional recommendations for the places to be filled shall be made by the principal to the superintendent and then by the superintendent to the board of trustees as provided above.

incompetent and for that sole reason he refused to approve her employment. Floyd did not undertake to reevaluate Mrs. Randle's qualifications or to give further consideration to her application.

The applications of Mrs. Randle, and the other unnamed applicant, came to Floyd in an unusual manner. Floyd testified that Merritt customarily conferred with him about the applications which he had received before making a recommendation. On the occasion in question, Merritt did not do this, but left the application in Floyd's office with a written recommendation. Floyd thought, perhaps, that Merritt was under some pressure to recommend Mrs. Randle, although this was denied by Merritt.

Randle and his wife requested a due process hearing on the denial of Mrs. Randle's application for employment. They were not given such a hearing, although the School Board afforded them an "audience". Floyd was not present when Randle and his wife appeared before the Board and did not, at any time, advise the Board of his reasons for refusing to approve Mrs. Randle's application. The Board assumed the position that since Mrs. Randle had not been recommended for employment by the Superintendent, the Board did not owe the Randles a hearing in the matter. The Board, therefore, declined to assume any responsibility in the matter.

Mr. and Mrs. Randle thereafter filed the action sub judice.

The sole and only question presented by the record is whether Floyd refused to approve Mrs. Randle's application for employment in June 1971 because she was an incompetent teacher, or because she was the wife of Carver Randle.

The evidence does not sustain the charge that Mrs. Randle was incompetent; on the other hand, Mrs. Randle's competency is supported by the great preponderance of the evidence.

Floyd left Merritt with the impression that he would not approve Mrs. Randle's application for the sole reason that she was the wife of Carver Randle. At the hearing in the action Floyd stated positively that this had no bearing at all on his decision, but, that he refused to approve Mrs. Randle's employment because he believed her to be incompetent, relying on Reno's evaluation of her four years previously.

■ In such a situation, it is extremely difficult for the court to reach a decision on the issue. The burden is upon plaintiffs to sustain their position by a preponderance or greater weight of the credible evidence. They need not, however, prove their case to an absolute certainty.

■■ After considering all the evidence which has been introduced, the court cannot escape the conclusion that if Mrs. Randle had not been the wife of Carver Randle, her application would have received Floyd's approval. This being the case, the School District, through its Superintendent, violated Mrs. Randle's right of free association guaranteed to her by the First and Fourteenth Amendments. The defendants cannot deny Mrs. Randle employment in the public schools of the district on constitutionally impermissible grounds. Rainey v. Jackson State College, 435 F.2d 1031 (5th Cir. 1970). Neither can Mrs. Randle be punished by the School District or suffer at its hands because she elected to become the wife of Carver Randle. Pred v. Board of Public Instruction of Dade County, Fla., 415 F.2d 851 (5th Cir. 1969); Gibson v. Florida Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929; Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321. In Gibson, Mr. Justice Goldberg said "[t]he First and Fourteenth Amendment rights of free speech and free association are fundamental and highly prized. . . ." The denial of public employment to Mrs. Randle because of the exercise by her husband of his constitutionally protected right of free speech and expression violated the right of free association guaranteed her by the First and Fourteenth Amendments.

It is clear that the Board of Trustees are charged with the duty of operating the schools of the district in accordance with constitutional directives.

When Mrs. Randle and her husband appeared before the School Board and charged that the Superintendent of the Schools had violated the constitutional rights of Mrs. Randle in refusing to approve the principal's recommendation because she was the wife of Carver Randle, a well known activist in Civil Rights matters, the Board had the duty to investigate the charge, and, if determined to be true, to right the wrong inflicted upon Mrs. Randle. The Board could not remain silent and ignore the issue simply because the Superintendent had not recommended Mrs. Randle for employment in the district schools. Cf. McNeal v. Tate County School District, 460 F.2d 568 (5th Cir. 1972); Knowles v. Board of Public Instruction of Leon County, Fla., 405 F.2d 1206 (5th Cir. 1969).

In sum, the court holds that Mrs. Randle is entitled to employment in the schools of defendant School District, to begin with the 1974–1975 school year.

An appropriate order will be entered by the court.