# DONALD E. MULES *v.* MARYLAND RACING COMMISSION

[No. 718, September Term, 1975.]

*Decided March 3, 1976.*

534

The cause was argued before ORTH, C. J., and POWERS and MOORE, JJ.

*William F. C. Marlow, Jr.* and *W. Stanwood Whiting,* with whom was *Edward C. Covahey, Jr.* on the brief, for appellant.

*Josef E. Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General* and *Jon F. Oster, Deputy Attorney General* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## STATEMENT OF THE CASE

### The Federal Proceedings

On 18 December 1974, in the United States District Court for the District of Maryland,[1] Donald E. Mules was found guilty by a jury of six violations of the laws pertaining to controlled dangerous substances.[2] Motions for arrest of judgment, for judgment of acquittal, and for a new trial were filed on 26 December and denied, upon hearing, on 20 March 1975. Mules was thereupon sentenced to a total term

---

\* Note: *Certiorari* denied, Court of Appeals of Maryland, May 25, 1976.

1. The United States v. Dr. Donald E. Mules, DVM, DEA Registrant #AM 1531309, Criminal Docket No. 74-0336-N.

2. Mules was charged under an eight count indictment and found guilty of the offenses presented in the 1st, 2nd, 4th, 6th, 7th and 8th counts: failing to keep and furnish complete and accurate records for cocaine as required by Title 21, U. S. Code, § 828 (a) (c) (2); failing to keep on a current basis accurate records for dispensing cocai..e in violation of Title 21, U. S. Code, § 827 (a) (3) (b); knowingly and willfully making false and fraudulent representations to an agent of the Drug Enforcement Administration in violation of Title 18, U. S. Code, § 1-001; knowingly and intentionally furnishing fraudulent material information in the form of records required to be kept under Title 21, U. S. Code, § 843 (a) (4); and omitting material information from the record required to be kept under Title 21, U. S. Code, § 827 (a) (3) in violation of Title 21, U. S. Code, § 843 (a) (4).

of imprisonment for three years.[3] He noted an appeal to the United States Court of Appeals for the Fourth Circuit. The judgments were affirmed in a *per curiam* opinion filed 19 January 1976. *United States v. Mules*, 532 Fed. 2d 752. In the usual course, the mandate will issue twenty-one days from the date of the decision, with thirty days thereafter permitted to petition the Supreme Court of the United States for writ of certiorari. Fed. R. App. P. 41 (a) and (b); Rules of Supreme Court, rule 22.

## The State Proceedings

The federal proceedings had a collateral effect. For over two decades Mules had been licensed to practice veterinary medicine in Maryland. Agricultural Art. § 2-301 through § 2-313.[4] For some years he specialized in equine veterinary medicine. The Maryland Racing Commission (Commission) was created and established by the General Assembly as part of the Department of Licensing and Regulation. Its jurisdiction, supervision, powers and duties, subject to the power and authority of the Secretary of Licensing and Regulation, extend to all persons, associations and corporations conducting any meeting in Maryland whereat horse racing shall be permitted for any stake, purse or reward. Code, art. 78B, § 1. The Commission has "full power to prescribe rules, regulations and conditions under which all horse races shall be conducted within the State of Maryland." Code, art. 78B, § 11 (a). Under that power, it

---

**3.** The docket entry under date of 24 March 1975 reads:

"Judgment: That the Defendant is hereby committed to the custody of the Attorney General or his authorized representative for imprisonment for a period of One (1) Year as to each of Counts Nos. 1 and 2, Imprisonment for a period of Three (3) Years as to each of Counts Nos. 4, 6, 7 and 8. Said sentence as to Counts Nos. 1, 2, 4, 6, 7 and 8 to run concurrently, making a total term of imprisonment of Three (3) Years; Upon a Jury Verdict of 'Not Guilty' as to each of Counts Nos. 3 and 5, a Judgment of Acquittal is entered by the Court, Order (Northrop, C. J. — Dated March 20, 1975)"

**4.** Formerly Code, art. 43, §§ 150-157. For what "practice of veterinary medicine" includes and does not include, see Agricultural Art. § 2-301 (f) and (g).

duly adopted, pursuant to Code, art. 41, § 9, rules governing thoroughbred racing.[5] Commission Rule 09.10.46.08 provides:

> "No Veterinarian shall be allowed to practice at the race track of any Racing Association under the jurisdiction of the Commission until such Veterinarian shall have obtained a license from the Commission. Such license must be applied for and issued annually. Such license may be revoked or suspended, for cause, by the Commission."

Mules was first issued a license by the Commission on 13 April 1967 to practice veterinary medicine at the various race tracks in this State. Thereafter, the Commission issued him a license for each calendar year through 1974.

### The Proceedings Involving the Stewards

Code, art. 78B, § 5 (b) requires that there be three Stewards at every race meeting. Commission Rule 09.10.44.10 grants the Stewards the power and imposes on them the duty to regulate and govern the conduct of all . . . persons attendant on horses during, before and after races." Commission Rule 09.10.44.22 provides:

> "If the Stewards shall find that any person licensed by the Commission has violated any of the Rules and Regulations of the Commission or has been involved in any improper turf practice, they may exclude such persons from the grounds, or any portion of such grounds, of the association conducting the meeting or the grounds of any other association under the jurisdiction of the Commission or by suspension from acting or riding during the meeting, or for a period not exceeding 20 days after the meeting, or by fine not exceeding $200, or by both; and, if they consider necessary,

---

5. Maryland Agency Rules, .09 (Department of Licensing and Regulation) .10 (Maryland Racing Commission), hereinafter referred to as "Commission Rule".

any further punishment or additional fine, they
shall promptly refer the matter to the Com-
mission."

At the time the convictions of Mules were rendered in the
federal court, a meet was being held at Laurel. On 21
December 1974, after the convictions in the federal court but
before the imposition of sentence thereon, the Stewards at
the Laurel meet ordered that Mules be suspended because of
the federal convictions and denied him the privileges of the
grounds during the suspension. Mules could have appealed
to the Commission. Commission Rules 09.10.44.22-1-2-3-4.
He filed, however, an action in the Circuit Court for
Baltimore County, Equity No. 82051, to enjoin the Stewards
from denying him access to the race tracks in Maryland or
from otherwise interfering with his practice of veterinary
medicine, until final determination of the federal criminal
proceedings. On 9 January 1975, the Circuit Court for
Baltimore County denied the request for an injunction. The
chancellor found that the Stewards had "inherent power"
under the Commission Rules to control those who have
access to the tracks, including a licensed veterinarian "if the
actions of such person have or tend to have an adverse effect
on the conduct of racing in the State." He concluded that, in
the circumstances, the Stewards could suspend Mules during
the current meeting and for 20 days thereafter. The cur-
rent meeting at Laurel ended 1 January 1975. Thus, the
suspension was effective for 20 days after that date. The
chancellor cautioned: "It is imperative, however, that the
Maryland Racing Commission set a prompt hearing for the
purpose of affording Dr. Mules an opportunity to present his
case." [6]

*The Proceedings Involving the Commission*

The opportunity for Mules to present his case to the
Commission came through his application to practice as a
veterinarian at the tracks during the year 1975. Question 6
of the application asked: "Have you ever been denied a

---

6. The propriety of the equity proceedings is not before us.

license to work as a veterinarian by any Commission or
Racing Association?" Mules struck out the words "by any
Commission or Racing Association", placed a check mark in
the box designating "Yes", and inscribed: "By Stewards at
Laurel Race Course." He explained, "Having been found
guilty in U. S. District Court for the District of Md. Dec. 18,
1974."

Commission Rule 09.10.24.02 provides:

> "The Commission may refuse to issue or renew a
> license or may suspend or revoke a license issued
> pursuant to this section if it shall find that the
> applicant, or any person who is a partner, agent,
> employee or associate of the applicant, has been
> convicted of a crime in any jurisdiction, or is
> associating or consorting with any person or
> persons who have been convicted of a crime or
> crimes in any jurisdiction or jurisdictions, or is
> consorting or associating with, or has consorted
> with bookmakers, touts or persons of similar
> pursuits, or has himself engaged in similar
> pursuits, or is financially irresponsible, or has
> been guilty of or attempted any fraud or
> misrepresentation in connection with racing,
> breeding, or otherwise, or has violated or attempted
> to violate any law with respect to racing in any
> jurisdiction or any rule, regulation or order of the
> Commission, or shall have violated any rule of
> racing which shall have been approved or adopted
> by the Commission, or has been guilty of or
> engaged in similar related or like practices."

On 13 January 1975, the Commission held a hearing on the
application. See Commission Rule 09.10.10.01. After
testimony was received and argument heard, Commissioner
Carle A. Jackson, according to the transcript of the
proceedings, moved that "we deny the application of Dr.
Mules and deny him the privileges of the grounds." The
motion was seconded by Commissioner Donald S. Levinson
and a vote was taken. Commission Chairman J. Newton

Brewer, Jr. said: "The record will show that Commissioners Jackson, Brewer and Levinson voted to deny Dr. Mules his license." A document entitled "Findings of Fact and Order", hereinafter referred to as "Commission Opinion", is reproduced in the Joint Record Extract. It apparently was taken from a xerographic copy of a document attached to the Petition filed by Mules pursuant to Maryland Rule B2, § e. Alleged to be labelled "Exhibit #1" but actually labelled "Exhibit A", it is made a part of the Petition. The document ends with an "Order" reading: "It is the     day of January 1975, ORDERED by the Maryland Racing Commission that the application for a veterinarian's license of Donald Elmer Mules be denied and that he be denied the privileges of the grounds." Not only is the date incomplete, but the document is not subscribed, although there are lines for the signatures of the three Commissioners and the Secretary. There is no executed original or copy of an executed original of this document in the record transmitted to us.

*The Appeal Proceedings in the Circuit Court for Baltimore County*

On 17 January 1975 Mules filed an Order of Appeal in the Circuit Court for Baltimore County, requesting that the Clerk "Please enter an Appeal from the decision of the Maryland Racing Commission dated January 13, 1975 in the above-captioned matter."[7] Md. Rule B2, § a. He filed a petition as required by Md. Rule B2, § e, setting forth the action appealed from, the error committed by the Commission in taking its action, and the relief sought. The action appealed from was the refusal of the Commission to issue him a license to practice veterinary medicine for 1975 at the Maryland Race Tracks, and the denial of access to the Tracks. The errors alleged to have been committed by the Commission were basing its action on the conviction of him of a crime when he had not been convicted of a crime within the meaning of Commission Rule 09.10.24.02, and basing its

7. The Order was captioned: "Maryland Racing Commission v. Donald E. Mules, D.V.M."

action on his guilt of or attempting "any fraud or misrepresentation in connection with racing, breeding, or otherwise . . ." under that Rule. The relief sought was the reversal of "the ruling of the Maryland Racing Commission denying [him] access to the Maryland Race Tracks and further denying [his] application to practice veterinary medicine at the Maryland Race Tracks for the calendar year 1975." [8]

The appeal was heard by the Circuit Court for Baltimore County starting on 23 May 1975. It continued intermittently thereafter. On 21 July the court filed an opinion and order. The order read: "The decision of the Maryland Racing Commission dated January 13, 1975, is affirmed; the court costs shall be paid by the appellant, Dr. Mules." Mules noted an appeal to the Court of Special Appeals from that judgment.

## ISSUES FOR DECISION

Although, as we have indicated, the copies of the Commission Opinion in the record before us are not complete as they lack a date and the signatures of the Commissioners, it is manifest from the opinion of the court below that it was completely satisfied that the Commission had made the findings of fact and issued the order on 13 January 1975 as set out in the Commission Opinion. In any event, it is clear that the Commission refused to issue Mules a License for 1975 and that it denied him the "privileges of the grounds." [9]

---

8. Mules sought to stay the action of the Commission. His motion to that effect was denied by the Circuit Court for Baltimore County upon hearing on 10 February 1975. Md. Rule B6, § a.

9. It is not clear what is meant by "privileges of the grounds." Mules apparently construes it as denying him access to the tracks for he so complains in the Petition filed with his appeal to the Circuit Court. Commission Rule 09.10.56.18 reads:

"When any person subject to the jurisdiction of the Commission is formally charged with violation of the racing rules or any criminal statute of this or any other State, the Commission may suspend him until the charge has been tried, dismissed or otherwise disposed of. When a person subject to the jurisdiction of the

The position of Mules has been consistent at all levels. Its essence is that the Commission cannot take action against him on the basis of the federal court convictions until those convictions have become final. It seems that he considers "final" in accordance with the formula enunciated in *Linkletter v. Walker*, 381 U. S. 618 (1965), where the Court said, at 622, note 5: "By final we mean where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed . . . ."

When Mules attacked the action of the Stewards in suspending his license by seeking to enjoin them from denying him access to the tracks or from otherwise interfering with his practice of veterinary medicine, it was on the ground that measures against him were precluded until final determination of the criminal proceedings. At the hearing before the Commission, Mules' attorney, as pointed out in the Commission Opinion, "argued at length that the Commission should construe those references in its Rules to a 'conviction of a crime' to mean conviction after exhaustion of all appellate remedies." At the appeal proceedings before the Circuit Court for Baltimore County, as noted by the court in its opinion, Mules maintained "that he should be permitted to continue his practice at the Maryland Tracks until he has exhausted his appeals from his criminal conviction." On the appeal before this Court, he presents the question:

> "Under Rule 09.10.24.02 of the Maryland Racing Commission which purports to allow the exclusion of any licensee of the Commission from the race tracks of this State upon 'conviction of a crime,'

---

Commission is convicted of a criminal offense, in this or any other State, or the United States, the Commission may rule him off."

Whether the Commission intended to "rule him off", denying Mules any and all access to the tracks, or whether it intended to deny him merely the privileges of the grounds insofar as such privileges were necessary to the practice of veterinary medicine by him, was not established. In any event, Mules presents no question as to Commission Rule 09.10.56.18 in the appeal before us.

was it proper to bar the appellant, a veterinarian, from the tracks, upon the verdict and judgment in the United States District Court, where the appellant pursued a prompt and timely appeal therefrom?"

He argues that the action of the Commission was improper pending appellate determinations.

As consistent as Mules' position have been the decisions thereon below. The chancellor in the injunction proceeding remarked: "I might add that in my judgment the fact that the case has not yet gone through the appellate procedures does not affect the fact that Dr. Mules has been convicted of a crime, which in and of itself shows he is not worthy of access to race tracks." The Commission, in making its determination said: "While the Rules of Racing do not define 'conviction of a crime', . . . the Commission's broad discretionary powers permit it to conclude that a finding of guilt by a jury in the United States District Court meets the definition of a 'conviction of a crime'." Although pointing out that "the Commission's powers to refuse to issue a license may be based on grounds other than conviction of a crime", the Commission made clear that the basis of its action was the convictions. It declared: "In summary, the Commission believes that Dr. Mules' conviction in the United States District Court is sufficient cause for the Commission to refuse to grant him a license in the exercise of its broad discretionary powers to control all aspects of racing." [10] It later repeated this view: "[I]t is the Commission's conclusion that Dr. Mules' conviction in the United States District

10. The Commission expressed its evaluation of Dr. Mules' testimony:

"The gist of Dr. Mules' testimony before the Commission conveyed the highly technical nature of the crimes with which he was charged and found guilty in the United States District Court. However, the Commission must view seriously the fact that these violations of Federal statutes involved the mismanagement and deceit in connection with a narcotic drug. The Commission's concern for the scrupulous and exact management of narcotic drugs is amply illustrated in its rules and, therefore, the Commission cannot view Dr. Mules' conviction in the simple terms of a failure in character or personal habits."

Court is sufficient cause to deny his application for a veterinarian's license." The judge on appeal below was of like mind. Observing that the Commission concluded that the finding of guilty by a jury in the federal court met the definition of "a conviction of a crime" as used in the Rules, he said: "*A fortiori* is this true when, as the evidence now shows, the verdict of the jury of 'guilty' was converted into a judgment of conviction and sentence." The issue of what is meant by "conviction of a crime" in the contemplation of the Commission Rules is now before us.

The question is, does the phrase "has been convicted of a crime in any jurisdiction", as used in Commission Rule 09.10.24.02, contemplate that the provisions of the Rule may be invoked: (1) upon the entering of a verdict of guilty by a court or jury in a criminal action; or (2) upon the imposition of sentence on a verdict of guilty; or (3) upon the exhaustion of all direct appeal rights, that is when the judgment of conviction and sentence becomes final under the *Linkletter* formula.

### The Mootness of the Case

The question whether the Commission was wrong in refusing to license Mules for the year 1975 would ordinarily be moot because it involves a license for a year which has ended. *Comrs. of Vienna v. Phillips Co.*, 207 Md. 12, 19-20 (1955).[11] We believe, however, that the circumstances here provide a justification for a conclusion of nonmootness. We adopt the rationale of *Roe v. Wade,* 410 U. S. 113 (1973). In

---

11. For a discussion of mootness as applied in the judicial decisions of this State, see State v. Siegel, 13 Md. App. 444, 471-472 (1971), affirmed 266 Md. 256 (1972). We said, 13 Md. App. at 472, n. 29:

"The dismissal by courts of moot cases had been grounded at times on constitutional limitations of power. At other times they accept as a rule of decision governing the exercise of jurisdiction that a case which is moot will not be decided. In *Lloyd [v. Supervisor of Elections*, 206 Md. 36 (1954)] at 43 the Court found it unnecessary to decide whether its practice in dismissing appeals which were moot as to the parties, was because of a constitutional lack of power or whether it was the application of a rule of decision. It seems that the point is still left open. *Board of Education v. Montgomery County*, 237 Md. 191, 195; *Board of Public Welfare v. Myers*, 224 Md. 246, 251."

*Roe* an action was brought for declaratory and injunctive relief respecting Texas criminal abortion laws which were claimed to be unconstitutional. The action was instituted by Jane Roe,[12] unmarried and pregnant, who alleged that she was unable to obtain a legal abortion in Texas. The record did not disclose that she was pregnant at the time of the district court hearing or when the opinion and judgment were filed, and the rule in federal cases was that an actual controversy must exist at stages of appellate or certiorari review and not simply at the date action is initiated. It was suggested that the case had become moot because Jane Roe and all other members of her class were no longer subject to any pregnancy which existed when the action was filed. The Court said, at 125:

> "But when, as here, pregnancy is a significant fact in the litigation, the normal 266-day human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete. If that termination makes a case moot, pregnancy litigation seldom will survive much beyond the trial stage, and appellate review will be effectively denied. Our law should not be that rigid. Pregnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us. Pregnancy provides a classic justification for a conclusion of nonmootness. It truly could be 'capable of repetition, yet evading review'."

The denial of a license to Mules could certainly be "capable of repetition, yet evading review," on the point he presents. If he applies for a license for 1976, and the application is denied, and he exercises his appellate rights, that denial may also become moot by the passage of the calendar year before appellate determinations. But even if we did not think that a conclusion of nonmootness was justified, we would be constrained to express our opinion in the issue. The Court of

12. A pseudonym.

Appeals did so in *Comrs. of Vienna v. Phillips Co., supra,* despite the mootness of the case due to the fact that it involved a license for a year which had ended, "because of the continued vitality of the question and of the controversy and because the ordinance continues in force." 207 Md., at 19. The question and controversy here have continued vitality and the relevant Rules continue in force. We shall look at the merits of the issue.[13]

## DECISION

The Commission refused to consider Mules' convictions "in the simple terms of a failure in character or personal habits," and declined to accept his suggestion that they were mere technical violations of the law. It noted that its concern "for the scrupulous and exact management of narcotic drugs is amply illustrated in its rules...."[14] It said that it "must view seriously the fact that these violations of federal statutes involved the mismanagement and deceit in connection with a narcotic drug." See note 10, *supra.* It considered "the failure to keep accurate records on a controlled substance such as cocaine as a serious breach of the standards that it requires of a veterinarian practicing at tracks under its jurisdiction." It pointed out that it "has a continuing concern for the strict regulation and record keeping for all controlled substances that may be administered to thoroughbred horses." The Commission

---

13. When the Department of Licensing and Regulation was created as a principal department of the State government, Code, art. 41, § 221(a), the Maryland Racing Commission was included within it, Code, art. 41, § 221A (a). Section 221A (b) of art. 41 provided that the Department shall not have a board of review and that § 3C of the article, requiring that appeals from decisions of departments or agencies included within a department be heard by such a board, was inapplicable. Therefore, any party aggrieved by a final decision of the Commission is, by Code, art. 41 § 255 (a), entitled to judicial review as provided by § 255. But see, Code, art. 78B, § 10, as to licenses for the holding of a racing meeting. Proceedings for review shall be instituted in the circuit court of the county or in the Baltimore City Court, as the case may be, either where any party resides or has a principal place of business, § 255 (b). Review of any final judgment of those courts may be obtained by appeal to the Court of Special Appeals. Code, art. 41, § 256; Courts Art. § 12-308. Mules followed this course.

14. See, for example, subsections .04, .05 and .08 of Commission Rule 09.10.11 and subsections .02, .04, .06, .10, and .10-1 of 09.10.46.

therefore believed that although its Rules did not define "conviction of a crime", "the import of the Rules when viewed with the Commission's broad discretionary powers permit it to conclude that a finding of guilty by a jury in the United States District Court meets the definition of a 'conviction of a crime'." The court below on appeal was in complete agreement. We are also. We find that "conviction of a crime in any jurisdiction", as used in Commission Rule 09.10.24.02, contemplates that the Rule may be invoked upon the entering of a verdict of guilty in a criminal action in a court of competent jurisdiction.

"Horse racing is an endeavor and undertaking that necessarily must be the subject of intensive, extensive and minute regulation. . . . It exists only because it is financed by the receipts from controlled legalized gambling which must be kept as far above suspicion as possible, not only to sustain and profit the racing fraternity but to feed substantial, although by today's standards relatively few, millions to the State's revenues. Not surprisingly the legislature has given the Commission full power to control racing." *Jacobson v. Md. Racing Comm'n.*, 261 Md. 180, 183 (1971). One of the ways the Commission controls racing is through its Rules. It may make such rules generally regulating all matters pertaining to horse racing, and regulating the conduct of all persons, individuals, associations, or corporations, holding or conducting horse race meetings within Maryland, and the conduct of all owners, trainers, jockeys, jockeys' agents, grooms, or other persons, including veterinarians, who participate in racing at the meetings. Commission Rule 09.10.01.01. The manifest object of the Rules is to insure that horse racing "may be conducted fairly, decently and clean . . . ." *Mahoney v. Byers*, 187 Md. 81, 84 (1946).[15]

---

15. In Comptroller v. Rockhill, Inc., 205 Md. 226, 234 (1954), the Court said:

"There are several different classes of administrative rules. Some are legislative rules, which receive statutory force upon going into effect. Others are interpretative rules, which only interpret the statute to guide the administrative agency in the

In making our determination of the meaning of "convicted of a crime", we are strongly persuaded by the view of the Commission. Not only is the general rule that courts are not permitted to substitute their judgment for the expertise of those persons who constitute the administrative agency from which the appeal is taken, *Grosman v. Real Estate Comm'n.*, 267 Md. 259, 265 (1972), and see Code, art. 41, § 252 (d), but the authority of the Commission to construe its own Rules is compatible with the full power the General Assembly bestowed upon it to control horse racing. Further, it is patent that the interpretation adopted by the Commission is not only consistent with, but essential to, its function and duty to see that horse racing is conducted fairly, decently and cleanly. The nature of the crime here, as the Commission believed, clearly could bear a direct and substantial relationship to horse racing.[16] To permit a person to practice veterinary medicine at the tracks, after being found guilty of such a crime, during the protracted period of time it takes to exhaust appellate procedures would be contrary to the public interest.[17] We find support for the view that "conviction of a crime" is satisfied upon the rendering of a verdict of guilty in the Rules themselves. Commission Rule 09.10.56.18, sets out in full in note 9 *supra*, recognizing the need for prompt action to preserve the

---

performance of its duties until directed otherwise by decisions of the courts. Some rules are merely rules of procedure. Others implement the statute by stating the policy by which the agency will be governed in the exercise of its authority."

We think that the Commission Rules are by nature legislative rules which received statutory force upon going into effect.

**16.** We observe that the authority of the Commission to refuse to issue or renew a license under Commission Rule 09.10.24.02 is discretionary. Thus, the nature of the crime of which an applicant is convicted may be considered by the Commission.

**17.** "Racing indeed is not 'a strictly private business'." Greenfeld v. Md. Jockey Club, 190 Md. 96, 104 (1948). "The state has at least two substantial interests to be served. It has a humanitarian interest in protecting the health of the horse, and it has a broader and more weighty interest in protecting the purity of the sport, both from the standpoint of protecting its own substantial revenues derived from taxes on legalized pari-mutuel betting and protecting patrons of the sport from being defrauded." Hubel, et al. v. The West Virginia Racing Commission, 513 F. 2d 240, 243 (4th Cir., 1975.)

integrity of horse racing, provides that when a person subject to the jurisdiction of the Commission "is formally charged with violation of . . . any criminal statute of this or any other State, the Commission may suspend him until the charge has been tried, dismissed or otherwise disposed of." Unless the charge is dismissed or otherwise disposed of, the suspension is authorized until the person is "tried" thereon. If "conviction of a crime" required exhaustion of all appeal remedies, there would be a vacuum between the trial resulting in a verdict of guilty and the "conviction." During that period the suspension would not be in effect, and the Commission would be powerless to act. Patently, this was not the intent of the Rules.[18]

Mules also claims that 09.10.24.02 of the Commission Rules is "void *per se* with respect to the phrase 'convicted of a crime', for overbreadth and vagueness" and that the application to him was "unauthorized, unreasonable, and invalid" because the misconduct attributed to him "was unrelated to the conduct of horse racing." We have indicated that the Commission found that the crimes of which he was convicted were very much related to the conduct of horse racing and particularly so with respect to a veterinarian licensed to treat horses at the tracks. As the Commission pointed out, its concern was manifest from its Rules concerning controlled substances and medication and treatment of horses at the meetings. We are in full accord with the belief of the Commission. We find that the misconduct of Mules was related to the conduct of horse racing, and that the application of 09.10.24.02 to him was not, for that reason, unauthorized, unreasonable and invalid.

As to 09.10.24.02 being void *per se* with respect to "convicted of a crime" for overbreadth and vagueness, we note initially that the Court of Appeals has determined that,

---

18. State v. Rappaport, 211 Md. 523 (1957), on which Mules heavily relies, held that a person whose sentence had been suspended after a verdict of guilty in a New York criminal proceeding had not been convicted for purposes of Code, art. 33, § 193. *Rappaport* does not compel a decision contrary to that which we have reached in the circumstances of the instant case.

"except in rare instances, [the doctrine of vagueness] is applicable only in criminal cases." *Maryland National Capital Pk. & Pln'g. Comm'n. v. Rockville*, 272 Md. 550, 559 (1974). The Court said:

> "The constitutional requirement of definiteness is violated by a *criminal statute* that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute. . . . [N]o man shall be held *criminally responsible* for conduct which he could not reasonably understand to be proscribed. [emphasis added]" 272 Md. at 559, quoting *U. S. v. Harriss*, 347 U. S. 612, 617 (1954).

The Court of Appeals noted that in the rare instance of a civil statute held to be unconstitutionally vague, what had been imposed was the " 'exaction of obedience to a rule or standard which was so vague and indefinite as to really be no rule or standard at all.' " *Small Co. v. American Sugar Ref. Co.*, 267 U. S. 233, 239 (1925) quoted in 272 Md. at 559.

In any event, 09.10.24.02 is not vague as applied to Mules. He was convicted of specific offenses, serious in nature, and related to the proper conduct of horse racing. He cannot maintain that some other veterinarian, who has been convicted of a mere traffic offense, could be refused a license to practice at the tracks. In other words, the application of the Rule is constitutional as to Mules, and he may not attack it on the ground that as applied to others under other circumstances, it might be unconstitutional. The Supreme Court expressed it thus in *Broadrick v. Oklahoma*, 413 U. S. 601, 610 (1973):

> "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in situations not before the Court."

Or, as Mr. Justice Holmes said: "If there is any difficulty . . . it will be time enough to consider it when raised by someone whom it concerns." *United States v. Wurzbach,* 280 U. S. 396, 399 (1930). See *United States v. Raines,* 362 U. S. 17, 21-22 (1960). We have announced our accord with this principle and applied it. *Colburn v. Colburn,* 20 Md. App. 346, 354 (1974); *Minner v. Minner,* 19 Md. App. 154, 158 (1973). Mules supplies no valid reason to depart from it.

The scope of judicial review of actions of administrative agencies is delineated in Code, art. 41, § 255 (g). It contains eight reasons why a decision of an agency may be reversed or modified. None apply so as to give occasion to reverse or modify the decision here. The court below was right in affirming it.

> *Order of 21 July 1975 of the Circuit Court for Baltimore County affirmed; costs to be paid by appellant.*