560 P.2d 939

**Lynn A. WEILAND, Sr., Individually and as father and next friend of Lynn A. Weiland, Jr., and Margaret Weiland, Plaintiffs-Appellants,**

v.

**Jose A. VIGIL and Esther L. Vigil, Defendants-Appellees.**

No. 2590.

Court of Appeals of New Mexico.

Jan. 11, 1977.

Rehearing Denied Jan. 25, 1977.

Certiorari Denied Feb. 25, 1977.

Charles G. Berry, Marchiondo & Berry, Albuquerque, for plaintiffs-appellants.

Eugene E. Klecan, Klecan & Roach, Albuquerque, for defendants-appellees.

## OPINION

SUTIN, Judge.

Plaintiffs appeal from a judgment for defendants arising out of an automobile accident that occurred on Montgomery Boulevard in Albuquerque, New Mexico. We reverse.

This case is a matter of first impression in New Mexico.

### A. Facts.

Plaintiffs, Lynn A. Weiland, Jr. and Margaret Weiland, and three other passengers were students at Eldorado High School and were being driven to school by Diane Keith (Diane). The Eldorado High School sits to the south of Montgomery Boulevard and east of Juan Tabo. It is separated from Montgomery Boulevard by a chain link fence and parking lot. The classes convened at 8:00 or 8:15 a. m.

There were two exit-entrances to the high school on Montgomery Boulevard, the second being to the east of the first. Twenty cars were backed up to the west in the curb lane from the first of these entrances.

The car driven by Diane was in the curb lane heading east on Montgomery Boulevard. Because of the traffic jam, she switched from the curb lane and drove in the lane nearest the median. She drove a distance of 428 feet, past the whole line of traffic, and to the point of collision with defendants' car, driven by defendant Esther Vigil (Esther), at the first entrance. Diane was headed east for the second entrance on Montgomery. Her speed was between 35 and 45 miles per hour. The collision occurred just prior to 7:55 a. m. when Esther exited from the entranceway.

The trial court instructed the jury:

There was in force in the state at the time of the occurrence in question a certain statute which provided that:

"Speed restrictions [*regulations*]. No person shall drive a vehicle on a highway at a speed greater than:

1. Fifteen (15) miles per hour on all highways when passing a school [dur-

ing school recess or] while children are going to or leaving school [*and when the school zone is properly posted*]. In any [*every*] event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements [*as may be established by the New Mexico highway department or the New Mexico state police department*] and the duty of all persons to use due care."

*If you find from the evidence that this statute was violated you are instructed that such conduct constituted negligence as a matter of law.* [Emphasis added].

B. *The school zone statute was not applicable.*

The statute was not applicable because a school zone was not established by state or local authorities.

The *emphasized, bracketed* language in the instruction given was a part of the statute but it was omitted from the instruction. The bracketed phrase "[during school recess or]" is not a part of the statute. Only a portion of the statute was used, as well as an addition to the statute. See § 64–18–1.1, N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2).

"At all school crossings . . . *appropriate signs shall be provided* as prescribed by the state highway commission or local authorities . . . regulating traffic movement within the school zones." Section 64–18–35(C), N.M.S.A.1953 (2d Repl. Vol. 9, pt. 2).

■ This is mandatory language. All parts of an Act relating to the same subject matter are to be construed together. *Kendrick v. Gackle Drilling Company,* 71 N.M. 113, 376 P.2d 176 (1962). Sections 64–18–1.1 and 64–18–35(C) are parts of an Act providing for a Code regulating traffic on highways. Laws 1953, ch. 139, and as amended.

■ In construing a statute, statutory words are presumed to be used in their ordinary and usual sense. *Bettini v. City of Las Cruces,* 82 N.M. 633, 485 P.2d 967 (1971). We must assume that the legislature chose the words advisedly to express its meaning unless the contrary clearly appears. *State v. La Badie,* 87 N.M. 391, 534 P.2d 483 (Ct.App.1975).

There was a school crossing at the first entrance-exitway from which Esther exited. By statute, the legislature declared that "appropriate signs *shall* be provided . . . regulating traffic movement within the school zones" . . . "*and* when the school zone is properly posted", the speed is reduced to 15 miles per hour. [Emphasis added]. Sections 64–18–35(C) and 64–18–1.1(A)(1), supra. Otherwise, the speed is restricted to that limit fixed by law, which, in this case, was 45 miles per hour.

Sergeant Jack Martin of the Albuquerque police force investigated the accident. He testified that the speed limit in the area of the accident was 45 miles per hour; *that no school zone sign was posted,* and, although caution should be used, that 45 miles per hour was a safe speed for a vehicle to travel on the inside lane to the left of the traffic tie-up.

Oliver Garcia, a witness, whose vehicle led the traffic tie-up at the first entrance, was asked if he stopped as he approached the entrance. He answered:

I was going slow; I was doing about fifteen miles per hour. That is the speed limit in the school zone.

This witness did not testify that a school zone sign was posted. No evidence was presented that controverted the testimony of Sergeant Martin, and the record shows that during trial, defendants never relied on the school zone statute or a posted school zone sign.

Defendants claim that the plain meaning of the statute is that motorists passing schools are required to slow their vehicles down to 15 miles per hour whenever children are arriving at school; that the posting of a school zone sign is not a condition precedent to the imposition of the 15 mile

per hour speed limit. We disagree. The purpose of a school zone sign is to create a school zone, in the area of which speed must be reduced to 15 miles per hour. Without the school zone sign, the public is not notified of the precise distance from the school when the speed must be reduced.

▇ The posting of a school zone sign is a condition precedent to the establishment of a school zone. If it were not a condition precedent, we should have to declare the language of the above statutes to be mere surplusage. This we cannot do. The legislature is presumed to have used no surplus words, *Cromer v. J. W. Jones Construction Company,* 79 N.M. 179, 441 P.2d 219 (Ct.App.1968), overruled on other grounds, *Schiller v. Southwest Air Rangers, Inc.,* 87 N.M. 476, 535 P.2d 1327 (1975), and where possible, effect must be given to every part of a statute. *State ex rel. Clinton Realty Company v. Scarborough,* 78 N.M. 132, 429 P.2d 330 (1967).

▇ No school zone sign having been posted, we hold that a school zone was not created, the statute was not applicable, and the instruction given was erroneous.

C. *The instruction misled the jury.*

▇ We must note that the statute was enacted primarily for the safety of children going to or leaving school. See, e. g., *People v. Worosz,* 69 Misc.2d 426, 330 N.Y.S.2d 196 (1972); *People v. Underwood,* 36 Misc.2d 498, 233 N.Y.S.2d 377 (1962); *Ross v. Reigelman,* 141 Pa.Super. 293, 14 A.2d 591 (1940); *Quillin v. Colquhoun,* 42 Idaho 522, 247 P. 740 (1926).

▇ The terms "children" and "infant" are synonymous. Both refer to a child under the age of 21 years. However, today, children 18 years of age are considered to be adults. See, § 13–14–3, N.M.S.A.1953 (Repl.Vol. 3, pt. 1) of the Children's Code; § 3–21–2, N.M.S.A.1953 (Repl.Vol. 1, 1975 Supp.) (of the Federal Voting Rights Compliance Act); § 57–1–6, N.M.S.A.1953 (Repl. Vol. 8, pt. 2, 1975 Supp.) (pertaining to marriage); § 64–13–40(B), N.M.S.A.1953 (2d Repl.Vol. 9, pt. 2, 1975 Supp.) (pertain-

ing to chauffeur license); *Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970).

▇ The statute would, therefore, apply to children who are under 18 years of age. The speed limit of 15 m. p. h. would apply "while children [under the age of 18 years] are going to, or leaving school, and when the school zone is properly posted." *Underwood,* supra, says:

The law has recognized that such protection is necessary, because it is a matter of common knowledge that an infant not only lacks the adult knowledge of the probable consequences of his acts or omissions, but is wanting in capacity to make effective use of such knowledge as he has. [233 N.Y.S.2d at 380].

In the instant case, if it were a school zone, Diane had a duty to slow down to 15 miles per hour to protect the safety of the children in the car. If she failed to do so, she would be negligent as a matter of law as far as the children were concerned. However, her negligence could not be imputed to the plaintiffs because the court instructed the jury:

Any negligence which you find on the part of the driver of the vehicle in which plaintiff was a passenger cannot be charge [sic] to plaintiff.

▇ The school zone instruction misled the jury to believe that the plaintiffs must suffer the pangs of outrageous misfortune resulting from the negligence of Diane even though her negligence did not affect the conduct of the children. An instruction which is likely to confuse or mislead the jury is prejudicial error. *Embrey v. Galentin,* 76 N.M. 719, 418 P.2d 62 (1966); *Garcia v. Southern Pacific Company,* 79 N.M. 269, 442 P.2d 581 (1968); *Bolen v. Rio Rancho Estates, Inc.,* 81 N.M. 307, 466 P.2d 873 (Ct.App.1970).

D. *The trial court erred in disallowing evidence of impeachment of a witness.*

Plaintiffs called Oliver Garcia as a witness.

He was the driver of the vehicle moving east in the curb lane who stopped at the first entranceway on Montgomery Boulevard to permit Esther to exit from the school grounds. Esther intended to drive across the eastbound lanes to the westbound lanes of Montgomery and proceed west.

Esther and Garcia each testified that she had stopped before leaving the school grounds and did not prevent Garcia from moving forward in his lane of travel. Plaintiffs sought to impeach Garcia with prior inconsistent statements that defendants' vehicle had exited and stopped in the middle of his lane and prevented him from driving east. These purported statements were made (1) in a taped interview taken by an insurance agent, (2) to a paralegal employee of plaintiffs' attorney, (3) to Officer Martin at the scene of the accident, and (4) in a deposition taken in a companion case involving Diane.

The trial court denied admission of the impeachment testimony because it was immaterial, irrelevant and hearsay. We disagree.

The impeachment testimony would establish that defendant had stopped her car in such a manner as to impede Garcia from driving east on a heavily trafficked boulevard; that Esther had caused the traffic jam in the curb lane that obstructed the view of Diane and caused Diane to switch to another lane to proceed east to the second entrance to the school grounds; that when Garcia stopped his pickup truck, Esther, already in the eastbound curb lane, could have cleared the eastbound lanes and avoided the accident. The impeachment testimony was relevant and material to the issue of Esther's negligence. This impeachment testimony was admissible in evidence under rules governing this subject matter.

The impeachment testimony excluded by the trial court was offered by plaintiff in rebuttal.

 *First,* "In the reception or exclusion of oral testimony much must be left to the discretion of the trial court". 88 C.J.S. Trial § 72 (1955). However, when a trial court exercised its discretion on untenable grounds, it established an abuse of discretion. *Grigsby v. City of Seattle,* 12 Wash.App. 453, 529 P.2d 1167 (1975). The exclusion of testimony because it is incompetent, irrelevant and immaterial is untenable. An objection to admissibility on these grounds is too general to warrant consideration by the trial court because it cannot intelligently rule on the objection, and opposing counsel cannot obviate the objection if possible. *Henderson v. Dreyfus,* 26 N.M. 541, 191 P. 442 (1919). See, *State v. Lewis,* 36 N.M. 218, 12 P.2d 849 (1932).

"It is wise to remember that the trend in American jurisprudence is toward the greater admissibility of evidence. We must not 'close any reasonable avenues to the truth in the investigation of questions of fact. In doubtful cases the doubt should be resolved in favor of its admissibility.' [Citations omitted]." *Pavlos v. Albuquerque National Bank,* 82 N.M. 759, 767–68, 487 P.2d 187, 195 (Ct.App.1971) (Sutin, J., dissenting).

*Second,* "It also is discretionary with the trial court to exclude rebuttal evidence which is properly part of the case-in-chief or merely cumulative thereof." *Phillips v. Smith,* 87 N.M. 19, 23, 528 P.2d 663, 667 (Ct.App.1974).

 *Third,* impeachment testimony must be relevant to an issue in the case. *Empire Fire & Marine Insurance Company v. Lee,* 86 N.M. 739, 527 P.2d 502 (Ct.App. 1974).

*Fourth,* "Any relevant evidence having a tendency in reason to prove any material fact is admissible unless expressly excluded from evidence by the codified rules." *Williams v. Union Pacific Railroad Company,* 204 Kan. 772, 465 P.2d 975, 981 (1970).

Our Rules of Evidence do not exclude impeachment testimony.

 "The credibility of a witness may be attacked by any party, including the party calling him." Rule 607 of the Rules of Evidence [§ 20–4–607, N.M.S.A.1953 (Repl.Vol. 4, 1975 Supp.)]. This impeach-

ment can be accomplished by extrinsic evidence of prior inconsistent statements as long as the witness is allowed to explain or deny the same, and the opposite party has an opportunity to examine the witness on the inconsistent statements. Rule 613(b) of the Rules of Evidence [§ 20–4–613(b), N.M. S.A.1953 (Repl.Vol. 4, 1975 Supp.)]. Extrinsic evidence is not collateral when the evidence is relevant and material to the issues in the case. *State v. Ross,* 88 N.M. 1, 536 P.2d 265 (Ct.App.1975).

█ "It is fundamental that a statement, written or oral of a witness as to a material matter inconsistent with his testimony at trial is admissible for impeachment purposes." *State v. Carlton,* 82 N.M. 537, 542, 484 P.2d 757, 762 (Ct.App.1971). Furthermore, for the purpose of impeachment, evidence is not barred because it is hearsay. A prior statement by a witness is not hearsay when the statement is inconsistent with his testimony. Rule 801(d)(1) of the Rules of Evidence [§ 20–4–801(d)(1), N.M.S.A. 1953 (Repl.Vol. 4, 1975 Supp.)].

█ The foundational prerequisites of Rule 613(b), supra, are: (1) that Garcia testify to relevant and material facts bearing upon the negligence of Esther; (2) that Garcia be shown the alleged contradictory remarks in a transcript of the tape or be allowed to listen to it; (3) that he admit having had the interview with the insurance agent; (4) that he is afforded an opportunity of explanation; and (5) defendants are afforded the opportunity of examining Garcia on the statements made in the tape. *N. L. R. B. v. Vangas, Inc.,* 517 F.2d 747 (9th Cir. 1975). For the method of procedure in the use of a tape recording for impeachment purposes, see *Slatinsky v. Bailey,* 330 F.2d 136 (8th Cir. 1964), where a similar event occurred. Under these foundational rules, the testimony of the paralegal employee, Officer Martin, and Garcia's testimony by deposition, were *also* admissible.

These foundational prerequisites were present in the record.

Successful impeachment of a witness is an important aspect of a trial because it allows a jury to judge the weight to be given to the testimony of the witness. The plaintiffs were denied this benefit which would have accrued if impeachment testimony were allowed in evidence.

The trial court abused its discretion and this was prejudicial error.

We have reviewed other points of error raised by plaintiffs. We do not find them of sufficient merit to warrant an opinion thereon.

Reversed. Plaintiffs are granted a new trial.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.