722 P.2d 1176

Ted  VAROZ,  D.P.M.,
Petitioner-Appellant,

v.

NEW MEXICO BOARD OF PODIATRY,
Respondent-Appellee.

No. 16010.

Supreme  Court  of  New  Mexico.

July  25,  1986.

Winston Roberts-Hohl, Santa Fe, for petitioner-appellant.

Paul Bardacke, Atty. Gen., Lyn Hebert, Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

WALTERS, Justice.

Dr. Varoz appeals from the order of the district court affirming the New Mexico Board of Podiatry's revocation of his professional license. Following indictment in January 1983, Dr. Varoz was convicted in federal district court on eight of twenty-five counts of Medicare fraud, on May 13, 1983. On August 15, 1983, the Board is-

sued its Notice of Contemplated Action to suspend or revoke Varoz's license. After two preliminary hearings, in which Varoz disqualified certain of the Board members, a hearing on the merits was held on March 24, 1984.

The Board's decision on May 23, 1984 included findings that: (1) Varoz had been convicted of.eight felonies relating directly to the practice of his profession; (2) each conviction constituted a separate and independent ground for revoking his license under the Podiatry Act, *see* NMSA 1978, § 61–8–11(B) (Repl.Pamp.1986), and the Criminal Offender Employment Act, *see* NMSA 1978, § 28–2–4(A)(1) (Repl.Pamp. 1983); (3) Varoz had not been rehabilitated; (4) on April 9 and September 3, 1981, Varoz had in fact submitted the fraudulent Medicare claims which formed the basis for his convictions under Counts XIX and XIV, respectively; and (5) submission of the two false claims constituted dishonest and unprofessional conduct in violation of Section 61–8–11(J) and Rule VIII(b) of the New Mexico Board of Podiatry.

On July 20, 1984, after the Santa Fe District Court had affirmed the Board's decision, the Tenth Circuit Court of Appeals reversed five of Varoz's convictions. Varoz raises three issues in this appeal:

(1) The Board proceedings were infected with bias because the chairman had previously reviewed for Medicare the claims upon which Varoz's convictions were based.

(2) In light of rebuttal evidence presented at the disciplinary hearing, the Board erred in basing its decision in part on the fact of conviction under Count XIV, which had alleged that surgery for which a Medicare claim for payment had been submitted by Dr. Varoz on September 3, 1981 had not been performed.

(3) The statute of limitations for an action to revoke a professional license had run with respect to all of Varoz's convictions except one.

We affirm the district court, discussing the issues in reverse order.

## I.  Statute of Limitations

The Podiatry Act, NMSA 1978, §§ 61–8–1 to –17 (Repl.Pamp.1981), lists ten "reasons" for which a license may be refused, revoked or suspended, including "conviction of a crime involving moral turpitude." § 61–8–11(B). *See also* Section 28–2–4(A) of the Criminal Offender Employment Act, NMSA 1978, §§ 28–2–1 to –6 (Repl.Pamp. 1983). The Statute of Limitations of the Uniform Licensing Act, NMSA 1978, §§ 61–1–1 to· –31 (Repl.Pamp.1986), however, requires interaction with its provisions by declaring that no action which would result in refusal, suspension, or revocation of a license "may be initiated by a board later than two years after the *conduct* which would be the *basis* for the action." § 61–1–3.1(A) (emphasis added.)

Dr. Varoz argues, and correctly we think, that although the fact of conviction may provide a separate and independent basis for revoking a professional license, a conviction is not "conduct" within the meaning of Section 61–1–3.1(A) and, therefore, the two-year limitation period began to run from the time of the conduct, transaction, or occurrence that underlay the conviction rather than from the date of conviction.

The Uniform Licensing Act, enacted in 1957, is to be construed in such a fashion that its express purpose of promoting uniformity with regard to the conduct of board hearings be carried out. § 61–1–28. When a professional licensing board conducts a disciplinary hearing, it is acting as an arm of the sovereign to enforce public rights. *See Board of Dental Examiners v. Breeland*, 208 S.C. 469, 38 S.E.2d 644 (1946). Under such circumstances, statutes of limitations do not run against the sovereign unless the statute so provides expressly or by clear implication. *Board of Education v.·Standhardt*, 80 N.M. 543, 458 P.2d 795 (1969); *see also Board of Medical Examiners v. Jorgensen*, 198 Colo. 275, 599 P.2d 869 (Colo.1979).

The legislature is presumed to have known of the provisions of Sections 28–2–

4(A) (enacted in 1974) and 61–8–11(B) (enacted in 1977) when, in 1981, it added a statute of limitations to the Uniform Licensing Act. Because the legislature is presumed to have been well informed and reasonable when it enacted Section 61–1–3.-1, we must interpret the statute according to common sense and reason, *Sandoval v. Rodriguez,* 77 N.M. 160, 420 P.2d 308 (1966); give its words their usual and ordinary meaning unless a contrary intent is clearly indicated, *State ex rel. Duran v. Anaya,* 102 N.M. 609, 698 P.2d 882 (1985); give effect to every part of the statute, *Weiland v. Vigil,* 90 N.M. 148, 560 P.2d 939 (Ct.App.), *cert. denied,* 90 N.M. 255, 561 P.2d 1348 (1977); and construe it as a harmonious whole. *General Motors Acceptance Corp. v. Anaya,* 103 N.M. 72, 703 P.2d 169 (1985). *See also Atencio v. Board of Education,* 99 N.M. 168, 655 P.2d 1012 (1982). Applying all of these rules of construction, we conclude that to treat a conviction as "conduct" which would commence the running of the two-year limitation period of Section 61–1–3.1(A) would be an interpretation contrary to the plain and ordinary meaning of the words; would render a portion of Subsection (B) of that statute meaningless; would defeat uniformity with respect to the time limit for commencing disciplinary actions under the Uniform Licensing Act; and would produce inconsistent and absurd results.

The primary meaning of "conviction" is "the act or proving, finding, or adjudging a person guilty of an offense or crime." Webster's Third New International Dictionary (1966). Accordingly, if a "conviction" is "conduct," it is conduct attributable to the sovereign. Section 61–1–3.1(B) draws a clear distinction between the conduct of the state or sovereign and that of the licensee, and the effect given to each:

> The time limitation ... in Subsection A ... shall be *tolled* by any civil or *criminal litigation* in which the licensee ... is a party arising from substantially the same facts, *conduct* [or] transaction ... which would be the basis for the board's action. (Emphasis added).

"We must assume that the legislature chose [its] words advisedly to express its meaning unless the contrary [intent] clearly appears." *Weiland v. Vigil,* 90 N.M. at 151, 560 P.2d at 942. Under Subsection 61–1–3.1(A), the limitation period begins to run at the time of "the conduct which would be the basis for the [board's] action." Subsection (B) makes it clear that the conduct which forms the basis for the board's action is that of the licensee; the conduct of the state, *i.e.,* the act or process of conviction, operates only to toll the statute once the criminal litigation commences.

It would be contrary to common sense and reason to hold that the same process which tolls the statute will, if successfully completed, start it running anew. To allow the date of conviction to re-commence the running of Section 61–1–3.1(A) would produce an even more absurd result where the limitation period for instituting prosecution of a particular crime is longer than two years: if prosecution were commenced in the third year following the underlying culpable conduct and a conviction subsequently obtained, the limitation period of Section 61–1–3.1(A) would begin to run a second time even after it had expired completely. The provision for tolling during criminal litigation would be totally unnecessary under such an interpretation. Indeed, if so applied to license revocation for conviction of a crime, the legislature need not have enacted a statute of limitations at all.

The fact that the limitation period of Section 61–1–3.1(A) begins to run from the time of the licensee's culpable conduct and is shorter than that for some crimes means that, in some instances, the Board will be unable to use the conviction *as a separate and independent ground for license revocation* as provided in Sections 28–2–4(A) and 61–8–11(B). This result is not, however, inconsistent with either the policies or the language of the Criminal Offender Employment Act or the Podiatry Act.

Statutes governing the issuance and withdrawal of professional licenses reflect a legislative decision regarding the balance to be struck between the public's need to

be protected and the licensee's individual property right to earn a livelihood under a state-conferred license. *See Hawker v. New York*, 170 U.S. 189, 191, 18 S.Ct. 573, 574, 42 L.Ed. 1002 (1898); *Mitchell v. Association of the Bar*, 40 N.Y.2d 153, 351 N.E.2d 743, 386 N.Y.S.2d 95 (1976). In New Mexico, the licensee's property right has been recognized as warranting added evidentiary protection and strict compliance with legislatively-prescribed procedural safeguards in the conduct of disciplinary hearings. *See Jumbo, Inc. v. State ex rel. Branch*, 81 N.M. 223, 465 P.2d 280 (1970); *Young v. Board of Pharmacy*, 81 N.M. 5, 462 P.2d 139 (1969). Consistent with this policy is the legislature's declaration that revocation of a license to practice podiatry is allowed only in accordance with the procedural safeguards outlined in the Uniform Licensing Act. *See* § 61–8–11. The limitation period imposed by Section 61–1–3.1(A) of the Licensing Act is one such procedural safeguard that is incorporated into the statute governing the Board of Podiatry's authority to revoke. *Id.*

The legislature's intention to protect the licensee's property right to the fullest extent possible consistent with the public health and safety is also evident in the permissive language of the relevant license revocation statutes. Sections 61–8–11 and 28–2–4 both provide that a board *may* revoke a license if certain statutory conditions are met. In some instances, even if the licensee has committed a crime, the Board must determine whether the licensee has been rehabilitated and, if he has, his license may not be revoked. *See* § 28–2–4(A)(2) and (B).

The purpose of a license revocation proceeding is not to punish the licensee but to protect the public from practitioners who do not possess the necessary qualifications. *Board of Dental Examiners v. Breeland*, 208 S.C. at 476, 38 S.E.2d at 647. Accordingly, statutes of limitation for the prosecution and punishment of crimes have no relevance to such disciplinary proceedings, and to allow a criminal statute of limitations to effectively nullify the Licensing Act's statute of limitations would patently

be contrary to the non-punitive purpose of professional licensing acts.

■ The imposition of a two-year limitation period, which runs from the date of the culpable conduct rather than from the date of any resulting criminal conviction, fulfills the purpose of protecting the licensee's property right where to do so poses no present threat to the public. If the two-year period has expired with respect to culpable conduct before a licensee is prosecuted and convicted, the conviction cannot be a basis for revocation. Indeed, the Board may still consider the licensee's conduct during the two-year period immediately preceding the criminal litigation. If its investigation reveals no culpable conduct during that time, the Board could find that rehabilitation had occurred and that there was no present ground for revoking his license. Consequently, we hold that the limitation period of Section 61–1–3.1(A) begins to run from the date of the licensee's culpable conduct; the criminal prosecution of such conduct serves only to toll the statute if litigation is commenced during the two-year period following the criminal act; and a conviction based on such conduct does not under any circumstance start the limitation period running all over again.

■ The Board's argument that the limitation period is tolled from the time of indictment until the appeal is final is not supported in case law. A conviction is final pending appeal, *State v. Lujan*, 90 N.M. 778, 568 P.2d 614 (Ct.App.1977); *see also Ex Parte Alabama State Bar*, 285 Ala. 191, 230 So.2d 519 (1970); *Mules v. Maryland Racing Commission*, 30 Md.App. 533, 353 A.2d 664 (1976), *cert. denied* (1976). Should a conviction upon which a license revocation is timely based be reversed on appeal, the licensee may apply to the Board for reinstatement of his license. The action of the Board with respect to such application would then again be subject to the procedural safeguards and judicial review outlined in the Uniform Licensing Act, as well as to the statutory criteria for refusal of licensure provided in the particu-

lar act relating to the specific profession. In other words, under Section 61–1–3.1(B), if tolling applies, the limitation period is tolled from the time of indictment or information until the judgment of conviction has been entered, but no longer.

Thus, with respect to the three convictions upheld by the Tenth Circuit in Varoz's case, the limitation period for revocation was tolled from January 23, 1983 (date of indictment) to May 13, 1983 (date of conviction), or for three months and twenty days. When the Board issued its Notice of Contemplated Action on August 5, 1983, the limitation period had completely expired on the allegedly fraudulent Medicare claim of March 27, 1980, upon which one conviction was based. That conviction, and the underlying conduct, should not have been considered by the Board. The Board's action on the convictions under two other counts, however (which arose from false claims submitted on September 3, 1981 and April 9, 1981, respectively) occurred well within the total period of two years, three months and twenty days. Those convictions are discussed in relation to the remaining issues.

## II. Conviction on the September 3, 1981 false claim

■ At the hearing before the Board, Varoz presented evidence, including the videotaped testimony of the patient, confirming that the surgery described in the Medicare claim of September 3, 1981, had in fact been performed. That evidence had not been presented during Varoz's criminal trial. Varoz now claims that, in light of the evidence produced, the Board erred in basing its decision in any part on the conviction under that count.

The Board's decision clearly indicates that the revocation of Varoz's license was based not only on the fact of that conviction, but also on the Board's specific finding that Varoz had in fact submitted a fraudulent Medicare claim on September 3, 1981. Under Sections 61–8–11 and 28–2–4, the conviction, being final and presumptively valid, *State v. Lujan; Ex Parte Ala-*bama State Bar, formed a separate, independent, and adequate basis for revoking Varoz's license.

■ Varoz had his day in court at both the federal trial and appellate levels. He may not collaterally attack his conviction in a disciplinary proceeding before an administrative board which is totally without jurisdiction to determine the validity of the conviction, or to overturn or vacate it. *See Board of Dental Examiners v. Breeland.*

Because the other conviction also provided a timely and adequate basis for revoking Varoz's license, the Board's decision resting on both convictions must stand unless, as Varoz claims, the proceedings were infected with bias. That leads us to petitioner's final claim on appeal.

## III. Alleged Bias of Board Chairman

Varoz asserts bias on grounds that the Board chairman, Dr. Fitzpatrick, had previously reviewed for Medicare the claims with which the various convictions were concerned. Varoz has not preserved the issue for appeal.

Varoz was aware at the outset that Fitzpatrick had occasionally reviewed claims for Medicare. Several months before the March 1984 hearing, Varoz wrote Fitzpatrick requesting a declaration that Fitzpatrick had not been the insurance reviewer of Varoz's Medicare claim. The attorney general, counsel for the Board, responded and advised Varoz to address that issue on the record. At the subsequent preliminary hearing, Varoz again expressed his concern about Fitzpatrick's possible bias but did not then or during the subsequent hearing on the merits, directly question Fitzpatrick concerning his prior participation nor move to disqualify Fitzpatrick, nor did he raise the issue in his petition for judicial review. *See* Section 61–1–17.

In his answers to interrogatories propounded in the district court proceeding, Fitzpatrick stated that he could not remember whether he had reviewed any of Varoz's Medicare claims before the matter

reached the revocation stage. During the court hearing, and over the Board's objection, the court heard evidence tending to show that Fitzpatrick had previously reviewed at least some of Varoz's Medicare claims which, if true, should have impelled Dr. Fitzpatrick not to sit on the revocation proceeding. On the other hand, the admission of such evidence during judicial review was contrary to statutory procedure, *see* § 61–1–18; *Willoughby v. Board of Veterinary Examiners*, 82 N.M. 443, 483 P.2d 498 (1971), but apparently had no influence upon the court, since the Board's decision was upheld.

■ Under the test for bias set forth in *Reid v. New Mexico Board of Examiners in Optometry*, 92 N.M. 414, 416, 589 P.2d 198, 200 (1979), the evidence received in the trial court would indicate that Varoz had a basis for questioning Fitzpatrick's impartiality. However, in *Reid*, the issue of bias was fully pursued at each stage of the proceedings, and evidence of actual bias was presented to the Board. In the instant case Varoz alerted the Board, but Dr. Fitzpatrick did not respond and Varoz did not move either to disqualify Fitzpatrick or to elicit testimony on the matter until the judicial review stage of the proceedings. Consequently, we cannot consider on appeal an issue not fully presented at the administrative hearing. *See Wolfley v. Real Estate Commission*, 100 N.M. 187, 668 P.2d 303 (1983); *Groendyke Transport, Inc. v. State Corporation Commission*, 85 N.M. 718, 516 P.2d 689 (1973).

The Board, of course, is free to reconsider its decision in light of the fact that only two of the convictions, and the underlying conduct in each, have survived the statute of limitations or appellate reversal of Varoz's convictions. The conduct and convictions attaching to those two counts, however, each provide a separate and independent basis for revoking Varoz's license, and any reconsideration is entirely within the Board's discretion.

For the foregoing reasons the decision of the district court is AFFIRMED.

IT IS SO ORDERED.

SOSA, Senior Justice, concurs.

RIORDAN, C.J., specially concurs.

RIORDAN, Chief Justice (specially concurring).

I specially concur.

I concur with the opinion of Justice Walters with the exception of the next to the last paragraph. There is no issue before this Court about reconsideration by the Board and, therefore, we should neither address this matter nor comment on it, especially without citing any legal authority.