**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-081**

**Filing Date: July 2, 2012**

**Docket No. 31,262**

**NEW MEXICO REAL ESTATE COMMISSION,**

        **Petitioner-Appellant,**

**v.**

**JOYCE R. BARGER,**

        **Respondent-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**C. Shannon Bacon, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Elaine P. Lujan, Assistant Attorney General
Albuquerque, NM

for Appellant

Dixon, Scholl & Bailey, P.A.
Gerald G. Dixon
Spring V. Schofield
Albuquerque, NM

for Appellee

**OPINION**

**FRY, Judge.**

**{1}**     In this case, we must determine whether the 1993 version of the Uniform Licensing Act's two-year statute of limitations begins to run when the licensing board discovers the conduct giving rise to a disciplinary action against a licensee or when someone else, such as the complaining party, discovers the conduct.  Here, Petitioner, the New Mexico Real Estate Commission (NMREC), filed a notice of contemplated action against Respondent

1

Joyce R. Barger more than two years after the complaining party discovered Barger's alleged unethical conduct, but less than two years after the NMREC discovered the conduct. We hold that it is the licensing board's discovery that triggers the limitations period and, accordingly, we reverse the district court's contrary determination.

**BACKGROUND**

**{2}** This case arose from a complaint filed with the NMREC in October 2008 against Barger, a licensed real estate broker. The complaint, signed by Garry Pruitt, alleged that Barger was guilty of certain ethical violations in connection with a real estate contract originally executed in February 2000 by Jerry Cooper as seller and Barger as buyer. Pruitt later purchased the real estate contract from Cooper. The complaint listed both Pruitt and Cooper as complainants.

**{3}** The NMREC investigated the matter and, in May 2010, it filed a notice of contemplated action (NCA) against Barger threatening revocation of her license(s) unless the NCA's allegations were "explained or rebutted at a formal hearing." Barger filed a motion to dismiss the NCA on the ground that it was barred by the applicable statute of limitations.

**{4}** In her motion, Barger noted that the applicable statute of limitations, NMSA 1978, Section 61-1-3.1(A) (1993) (amended 2003), provided that no disciplinary action against a professional license holder "shall be initiated by a board later than two years after the discovery of the conduct that would be the basis for the action." Although the statute was amended in 2003 to specify that it was "discovery by the board" that triggered the limitations period, Barger argued that the amendment could not operate retroactively to apply to her case. As a result, she maintained, any alleged ethical violations she may have committed in connection with the real estate contract were immediately discoverable by the seller and, therefore, the statute of limitations expired two years from the date the real estate contract was executed.

**{5}** The NMREC hearing officer denied the motion and, on the same day, the parties entered into a settlement agreement reserving Barger's right to appeal her claim that the NCA was time-barred. Barger appealed to the district court, which found that the NMREC improperly filed the NCA because the statute of limitations had expired. The district court agreed with Barger that the 2003 amendment to the statute applied prospectively. The court further concluded that, consistent with the plain language of the 1993 version of the statute, the limitations period "[was] triggered when the basis of the action [was] discovered by the complain[ant], not when [the] complaint [was] made to the board." We granted the NMREC's petition for a writ of certiorari.

**DISCUSSION**

**{6}** The NMREC argues that the district court's interpretation of the 1993 version of the

statute of limitations leads to an absurd result because the limitations period is triggered when *anyone* discovers conduct that could possibly give rise to disciplinary action against a licensee, even if the person discovering the conduct delays reporting it to the NMREC until after the time period expires. Although the statute does not specify whose discovery is the triggering event, the NMREC claims that it makes more sense if it is the licensing board's discovery since the statute runs against the NMREC. Barger counters that the district court's interpretation of the statute is correct according to the plain language used by the Legislature. She claims that the statute of limitations was enacted to protect a licensee's property right, not to preserve a board's right to pursue a disciplinary action.

**{7}** "The meaning of language used in a statute is a question of law that we review de novo." *Bishop v. Evangelical Good Samaritan Soc'y*, 2009-NMSC-036, ¶ 8, 146 N.M. 473, 212 P.3d 361 (internal quotation marks and citation omitted). If the meaning of a statute is clear and unambiguous, we apply the statute as written. *Id.* ¶ 9. However, "where the language of the legislative act is doubtful or an adherence to the literal use of words would lead to injustice, absurdity or contradiction, the statute will be construed according to its obvious spirit or reason, even though this requires the rejection of words or the substitution of others." *Id.* (alteration, internal quotation marks, and citation omitted).

**{8}** The statute of limitations in question in this case is part of New Mexico's Uniform Licensing Act (ULA), NMSA 1978, Sections 61-1-1 to -33 (1957, as amended through 2003). The 1993 version of the statute of limitations states that "[n]o action that would [result in disciplinary actions specified in  Section 61-1-3(D)-(N)] shall be initiated by a board later than two years after the discovery of the conduct that would be the basis for the action," subject to certain exceptions not relevant to this case. Section 61-1-3.1(A) (1993). The statute does not specify whose discovery triggers the limitations period. Barger argues that it is discovery by the complainant, while the NMREC maintains that it is the licensing board's discovery. Either interpretation makes sense and, as a result, the statute is ambiguous. *See Leo v. Cornucopia Rest.*, 118 N.M. 354, 357, 881 P.2d 714, 717 (Ct. App. 1994) (stating that "[a] statute is ambiguous when it can be understood by reasonably well-informed persons in two or more different senses" and that "[t]he determination of whether the language of a statute is ambiguous is a question of law" (internal quotation marks and citation omitted)).

**{9}** When we interpret an ambiguous statute, our primary task "is to determine the intent of the [L]egislature and construe the statute in a manner that gives effect to that intent." *Id.* We do this by considering the language in the statute and its history, *id.*, as well as the "practical implications and the legislative purpose of [the] statute." *Bishop*, 2009-NMSC-036, ¶ 11.

**{10}** The language of the statute provides few clues  as to the Legislature's intended meaning of "discovery of the conduct." However, the statute does establish that it is an action "initiated by a board" that is barred if the action is filed more than two years after the discovery. This suggests that it is a board's discovery that triggers the limitations period

3

because, generally speaking, statutes of limitations "encourage[] *plaintiffs* to bring their actions while the evidence is still available and fresh." *Roberts v. Sw. Cmty. Health Servs.*, 114 N.M. 248, 256, 837 P.2d 442, 450 (1992) (emphasis added). This suggested meaning is not definitive, however, so we consider the statute's history.

**{11}** Section 61-1-3.1 in its original form barred any action initiated by a licensing board "later than two years after the conduct that would be the basis for the action." Section 61-1-3.1(A) (1981). Thus, prior to the 1993 amendment, there was no provision tying the running of the limitations period to discovery of the underlying conduct. In 1993, the Legislature amended the statute to bar board action initiated "later than two years *after the discovery* of the conduct," Section 61-1-3.1(A) (1993) (emphasis added), and in 2003, the Legislature amended the statute again. The most recent amendment bars any action "initiated by a board later than two years after the discovery *by the board* of the conduct." Section 61-1-3.1(A) (2003) (emphasis added).

**{12}** Barger argues that the amendments to the statute "are consistent with a progressive modification . . . to limit the application and breadth of the statute of limitations" and "reflect an apparent shift in legislative policies or decision making." Each version of the statute made sense as applied, Barger claims, and there is no basis for rewriting the applicable 1993 version to conform to the most recent amendment.

**{13}** On the other hand, the NMREC contends that the 1993 amendment, which added a discovery component to the statute, signified a sea change in legislative policy. The original version of the statute reflected a policy favoring licensees because it precluded disciplinary actions even if the licensing board was completely unaware of the licensee's objectionable conduct for more than two years. However, beginning with the 1993 amendment, the Legislature added a discovery requirement and thereby struck the policy balance in favor of the public's need to be protected from professional licensees' unethical practices. *See Varoz v. N.M. Bd. of Podiatry*, 104 N.M. 454, 456-57, 722 P.2d 1176, 1178-79 (1986) (explaining that profession licensure statutes reflect a legislative balance between the public's right to protection and the licensee's property right).

**{14}** The NMREC correctly observes that the existence of the original version of the statute—without a discovery component—has no bearing on the interpretation of the 1993 version, which added a discovery element. A discovery statute of limitations is inherently different from a non-discovery statute because the latter terminates the right to pursue an action after a specific amount of time from a statutorily defined event even if the triggering event has never been discovered. *See, e.g.*, *Cummings v. X-Ray Assocs. of N.M., P.C.*, 1996-NMSC-035, ¶¶ 49-50, 121 N.M. 821, 918 P.2d 1321 (contrasting, in the medical malpractice context, the statute of limitations, which is triggered by accrual/discovery of the injury, and the statute of repose, which terminates the right to bring an action after a certain amount of time has elapsed). Therefore, we do not believe the original version of Section 61-1-3.1(A) is particularly helpful in shedding light on the Legislature's intent when it enacted the 1993 version.

4

**{15}** Focusing on the 1993 version itself, we must determine whose discovery triggers the two-year limitations period. This inquiry is necessarily informed by the purpose of the ULA itself. The ULA provides professional licensing boards with a means for "protecting the public by enforcing professional standards with respect to the conduct of its licensees." *N.M. Bd. of Psychologist Exam'rs v. Land*, 2003-NMCA-034, ¶ 26, 133 N.M. 362, 62 P.3d 1244. In addition, it "reflect[s] a legislative decision regarding the balance to be struck between the public's need to be protected and the licensee's individual property right to earn a livelihood under a state-conferred license." *Varoz*, 104 N.M. at 1178-79, 722 P.2d at 456-57. Thus, the public's need for protection would best be served if the statute of limitations is triggered by the licensing board's discovery of the licensee's conduct, while the licensee's property right is more extensively protected if the triggering event is the complainant's discovery of the conduct.

**{16}** Also informative to our analysis are the purposes served by statutes of limitations. Our Supreme Court has stated that "a statute of limitations seeks to further . . . basic fairness to the defendant" by "encouraging promptness in instituting a claim, suppressing stale or fraudulent claims, and avoiding inconvenience." *Roberts*, 114 N.M. at 256, 837 P.2d at 450. The statute "should reflect a policy decision regarding what constitutes an adequate period of time for a person of ordinary diligence to pursue his claim." *Id.* (internal quotation marks and citation omitted). These statements reflect a recognition that "a person of ordinary diligence" must know about a claim in order to pursue it. It therefore makes sense that the entity who knows about the claim is the same as the entity who pursues it. In this case, the NMREC is the only entity that can bring a disciplinary claim against a person holding a real estate license and, therefore, its knowledge of the conduct should be the triggering event.

**{17}** Although Barger correctly points out that administrative bodies do not ordinarily discover conduct on their own, there are practical reasons—which also favor licensees—supporting the view that it is the licensing board's discovery of the objectionable conduct that serves as the triggering event. For example, if the triggering event is the complainant's discovery of the licensee's conduct and if the complainant delays presenting the complaint to the board, the board's opportunity to investigate the claim is curtailed by the delay. Giving a board a full two years to investigate and bring a claim could ultimately benefit the licensee because the board has a greater opportunity to discover and weed out baseless or fraudulent complaints.

**{18}** We find support for our interpretation of the statute in the Legislature's 2003 amendment to Section 61-1-3.1(A), which clarified that it is "discovery by the board" that triggers the running of the limitations period. There is New Mexico precedent for looking to later amendments of statutes for aid in interpreting ambiguous or unclear statutory language. For example, in *Leo*, this Court interpreted a provision in the Workers' Compensation Act that tied the amount of attorney fees paid by the employer to the amount of the employer's offer of judgment. 118 N.M. at 360-61, 881 P.2d at 720-21. The statute provided in Subsection (3) that "if the employer's offer was greater than the amount awarded by the compensation order," the employer would not be liable for its fifty-percent share of

5

the worker's attorney fees and, in Subsection (4), that "if the employer's offer was less than the amount awarded," the employer would have to pay one hundred percent of the worker's attorney fees. *Id.* at 361, 881 P.2d at 721 (emphasis and internal quotation marks omitted) (quoting NMSA 1978, § 52-1-54(F)(3), (4) (1990)). There was no provision for relieving the worker of his obligation to pay fifty percent of his attorney fees if *the worker* made an offer that was less than the compensation order until the Legislature amended the statute to change "employer's offer" in Subsection (4) to "worker's offer." *Leo*, 118 N.M. at 361, 881 P.2d at 721 (quoting Section 52-1-54(F)(4) (1993) (emphasis omitted)). We relied on the amendment to conclude that the Legislature had simply made "an error in language" in the earlier, applicable version of the statute. *Leo*, 118 N.M. at 362, 881 P.2d at 722. Therefore, we removed the words "the employer's offer" from Subsection (4) of the applicable version and inserted "the worker's offer" so that the applicable version had the same meaning as the amended version of the statute. *Id.* at 361-62, 881 P.2d at 721-22 (emphasis, quotation marks, and citation omitted). We stated that "the 1993 amendments . . . essentially reiterated and clarified the [L]egislature's intent," which was not clearly stated in the earlier version of the statute. *Id.* at 362, 881 P.2d at 722; *see Aguilera v. Bd. of Educ.*, 2006-NMSC-015, ¶ 19, 139 N.M. 330, 132 P.3d 587 (noting that "an amendment may clarify existing law, rather than change the law, if the statute was ambiguous or unclear prior to the amendment" (internal quotation marks and citation omitted)); *Wasko v. N.M. Dep't of Labor*, 118 N.M. 82, 84-85, 879 P.2d 83, 85-86 (1994) (holding that amendment adding a provision to a statute was meant to clarify existing law rather than change it and applying the amendment to a case governed by the pre-amendment version of the statute); *Resolution Trust Corp. v. Binford*, 114 N.M. 560, 568, 844 P.2d 810, 818 (1992) (applying statutory amendment to prior version of the statute applicable to the case by "indulg[ing] the presumption that the [L]egislature was aware that the law was not clear" and "interpret[ing] the amendment as a clarification of existing law"). Consistent with this case law, we conclude that the 2003 amendment to Section 61-1-3.1(A) simply clarified that it is a board's discovery that triggers the statute of limitations.

{19}     Barger argues that the district court's interpretation of the statute is consistent with our Supreme Court's decision in *Varoz*. We disagree. Although the Court in *Varoz* emphasized and enforced the protections provided to licensees by the ULA's statute of limitations, *see* 104 N.M. at 457, 722 P.2d at 1179 (stating that it was "[t]he [L]egislature's intention to protect the licensee's property right to the fullest extent possible consistent with public health and safety"), it was faced with a statute of limitations that was entirely different from the one we now interpret. The statute at that time contained no discovery component, and the limitations period ran from the date of the licensee's underlying conduct. *Id.* at 455, 722 P.2d at 1177. As a result, the Court logically understood the Legislature's intent to be "strict compliance with legislatively[]prescribed procedural safeguards." *Id.* at 457, 722 P.2d at 1179.

{20}     Since *Varoz*, the Legislature amended the statute to include the discovery of the underlying conduct as the triggering event. It follows that the Legislature decided to reject a "strict compliance" approach and to make the statute more favorable to the licensing board

and less favorable to the licensee. The rigid directives in *Varoz* are no longer applicable.

**{21}** Barger also argues that it would be unfair to determine that a board's discovery of a licensee's conduct is the event triggering the limitations period because delay in the board's discovery may inhibit the licensee's ability to access relevant records. She observes that her allegedly unethical conduct occurred some ten years prior to the NMREC's filing of the NCA, while the applicable real estate licensing regulations required her to maintain her business records for only three years. *See* 16.61.16.9(E)(5) NMAC (12/31/2008) (amended 1/1/2012).[1] It is true that a complainant's delay in bringing a licensee's conduct to a board's attention may result in some loss of evidence or fading of witnesses' memories, but, as evidenced by the 2003 amendment to Section 61-1-3.1(A), the Legislature apparently deemed the risk worth taking in order "to protect the public from practitioners who do not possess the necessary qualifications" for licensure. *Varoz*, 104 N.M. at 457, 722 P.2d at 1179. Moreover, the loss of evidence may be as damaging to a board's prosecution as it is to a licensee's defense. We fail to see how possible delay by a complainant militates in favor of the restrictive interpretation employed by the district court.

**{22}** In summary, we decline to apply the plain meaning doctrine to interpret a statute that is susceptible to two equally plausible meanings. Instead, we "search for and effectuate the legislative intent—the purpose or object—underlying the statute." *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 353, 871 P.2d 1352, 1359 (1994). The 2003 amendment clarifies that the Legislature intended the triggering event in Section 61-1-3.1(A) to be a licensing board's discovery of the conduct underlying an NCA.

**CONCLUSION**

**{23}** For the foregoing reasons, we reverse the district court's judgment holding that the NMREC's action against Barger is time barred. We remand this matter to the NMREC for further proceedings.

**{24}** **IT IS SO ORDERED.**

_____
**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

---

[1]The regulations have been amended and now require a broker like Barger to maintain records for no less than six years. *See* 16.61.16.9(F) NMAC (1/1/2012).

_____
**JAMES J. WECHSLER, Judge**

**Topic Index for *NM Real Estate Commission v. Barger*, Docket No. 31,262**

**APPEAL AND ERROR**
Standard of Review

**CIVIL PROCEDURE**
Statute of Limitations
**GOVERNMENT**
Licensing

**PROPERTY**
Brokers and Agents

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction